ISSACHAR HOAGLAND and others *vs.* THE INHABITANTS OF THE TOWNSHIP OF DELAWARE and others.

1. Equity will not interfere, where adequate relief can be had at law.

2. A court of equity will interfere, by injunction, to restrain the collection of a public tax assessed upon the property of individuals, only where the bill contains some peculiar ground of equitable jurisdiction.

The complainants are residents and tax payers of the township of Delaware, in the county of Hunterdon, and have filed their bill in this cause, to restrain the defendants from collecting a tax imposed by an act of the legislature, entitled "an act to authorize the township of Delaware, in the county of Hunterdon, to raise money by taxation to relieve the inhabitants of said township from the burden of a draft," approved 25th March, 1864.

The prayer of the bill is, that David Jackson, collector, may be restrained from collecting or receiving any moneys assessed under said act, and from taking any proceedings under said act against the inhabitants, &c., as delinquent tax payers; and that the collector and the committee of the inhabitants, may be enjoined from borrowing any money on the faith of the inhabitants of the township "for payment of the commutation money for exemption from the draft, of such persons as may be, or shall have been, drafted in said township," and from paying out, or disbursing any money borrowed for the purposes aforesaid, and from proceeding in anywise under said act; and that all other persons may be enjoined from so doing, and for other relief.

A rule to show cause was granted, and a temporary order made, to afford the complainants an opportunity of being promptly heard. The cause is now heard upon the argument of the rule.

*Mr. Richey,* for complainants, in support of the rule.

The question arises under the act of 25th March, 1864, to authorize the township of Delaware, to raise money by taxation to relieve the inhabitants of said township from the burden of a draft. *Pamph. L.* 1864, *p.* 509. The act, it is contended, was designed to carry into effect the act of congress, passed 3d March, 1863. *Laws of U. S.* 125, § 13.

The act is unconstitutional, because it is calculated to defeat the object which congress had in view. That object was to put down rebellion, and to raise the necessary troops for that purpose.

The state was required by act of congress, to furnish its quota of troops. The state law, if it authorized the act in question, was repugnant to the act of congress. No state can control the exercise of any power by the United States, within the scope of their constitutional authority. 1 *Kent's Com.* 409–10–12; *United States* v. *Peters,* 5 *Cranch* 115, 135. No state can pass any law impairing the effect of an act of congress. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518–19.

The object of the act of the legislature is expressed to be, "to relieve the township from the burden of the draft." Its operation is to defeat the draft which congress had ordered.

A state or municipal corporation has no power, under the laws and constitution of this state, to levy a tax on the public to discharge the liability of an individual to serve in the army of the United States. *Opinion of the Supreme Court of Maine,* 11 *Amer. Law Reg.* 621.

The tax is used to extort money from individuals, not for a contribution to any public burden. *People* v. *Mayor of Brooklyn,* 4 *Comst.* 423; *Reeves* v. *Treasurer of Wood county,* 8 *Ohio State R. (new series)* 333, 341–3; *Beekman* v. *Sara-*

·toga and Schenectady R. R. Co., 3 Paige 45; People v. Supervisors of Westchester, 4 Barb. S. C. R. 75; Taylor v. Porter, 4 Hill 140.

If the act itself is not unconstitutional, the use attempted to be made of it is illegal and contrary to public policy. By the resolution of the meeting, the collector is to be held *harmless* for a clear violation of his duty, and he is instructed to pay the money only to those who will stay at home; not to those who are willing to enter the service of the United States in defence of the Union.

*Mr. B. Vansyckel*, for defendants, contra.

The act of the legislature was designed to sustain the law of congress. This court has no power to interfere. There is no fraud, or evasion of the act of congress.

If the party is entitled to any relief, he has complete remedy at law by *certiorari*. A court of equity cannot arrest the exercise of a law, where the party may have relief in a court of law.

The injunction is asked on two grounds.

1. Because it is designed to defeat the act of congress.

Its real design is to carry out the law. The object for which the money was raised, was lawful and proper. If the resolution of the meeting was wrong, it does not affect the act, nor entitle the party to redress under it.

2. Because it is said, it is taking money from one individual to lay the burden upon another.

It was to relieve from a public burden. The draft had not yet been made, nor was it known upon whom the burden would fall. The draft was a burden upon the whole people, not upon a class, or upon individuals. The tax, therefore, was not for the relief of individuals, but of the whole community.

The use to which the tax was applied, was a fair way of applying money raised by tax. It relieved the party drafted, only for that draft.

*Mr. P. D. Vroom*, on the same side.

The bill is filed by residents of the township and tax payers, as a class. The basis of the bill is want of power in the legislature to pass the law.

The act does not seek to invalidate or impugn the act of Congress. That act is a law for enrollment. It calls out the national forces. It declares what shall constitute the national force, how they shall be enrolled, and prescribes the proceedings which shall be adopted to call them out.

The 13th section offers to the party drafted a triple alternative. Either is lawful. He may go himself, or furnish a substitute, or pay for his exemption. The law does not express or intimate a preference for either of these courses.

The law does not require either the service to be rendered, or the commutation to be paid by the man in person. The service may be performed by a substitute. The money may be paid by a friend. If all pay the commutation, the law is not defeated.

The bill does not state *how* the law was to defeat the act of Congress. The allegation is, that the legislature meant to defeat the law. The bill should show the ground of fraud. It is not charged that the defendants conspired to procure the law to defeat the act of Congress.

The ground of relief as to private acts of parliament is, that parties procured the act to be passed by fraud and circumlocution, not that parliament designed to defeat the law. *Comyn's Dig. "Grant," C.* 8, 9. As to the King's grants, see *Gough* v. *Bell*, 2 *Zab.* 486.

This is a public law affecting the rights of the township and the government of the nation. The court cannot take cognizance of the motives of the legislature in passing it. The question is, had the legislature the power to pass the act. It is clear that the party drafted was not bound to go, or pay the commutation in person ; a friend might go, or furnish a substitute. May not the legislature furnish a substitute ?

There is no direct charge in the bill that the act is uncon-

stitutional. The scope of the bill is that the act is unjust, and on this ground the bill is radically defective.

It is said the act is not within the constitutional power of the legislature. But government has the power of taxation as an inherent right, both general and special. It may tax for particular purposes, and in particular modes. The power of taxation is absolute and unqualified, save when it is restricted by the constitution.

One hundred men are required by the United States to be furnished by a township. They are laborers in the township, and a source of wealth and strength. The legislature say, by the act, you may tax yourselves to keep them at home. This is clearly lawful. *State* v. *Brannin*, 3 *Zab.* 494; *Providence Bank* v. *Billings*, 4 *Peters* 514.

There is no distinction between paying for volunteers and paying for substitutes; no distinction between paying for substitutes and paying of commutation. There are hundreds of thousands of securities afloat in the community, which were issued on that ground. The state is required by Congress to furnish a certain number of men; quotas are allotted to counties and townships. A township furnishes its men by lot. The furnishing of men is a burden on the township.

If an absolute draft was made, the duty must be personally performed. The government, by the act, has opened the way to avoid the personal performance of that duty. If the township tax to pay substitutes, why not to pay commutation money, which may be used by the national government to procure substitutes?

There is nothing in the bill to give the court jurisdiction. The charge is not that the officers are abusing their power, but that the act is void. The court has no jurisdiction in cases of that kind. The Supreme Court has superintending power over other jurisdictions. There is full relief at law.

This court can act in cases of this ground, only on some special ground of equity. There is no pretence of irreparable mischief. No allegation that the defendants are irre-

sponsible. There is no fraud charged in the execution of the law.

Upon the principle of this bill, every party taxed may come into this court for relief. *McCoy* v. *Chilicothe*, 3 *Hammond* 380.

This court cannot enjoin the collection of a tax, even if it be unconstitutional. *Redfield on Railways* 481; 14 *Ala.* 207; *Morris Canal & Banking Company* v. *Jersey City*, 1 *Beas.* 252; *Reeves* v. *Cooper, Ibid.* 224.

In the case reported in Maine, the act attempted to be done was without the authority of the legislature.

*Mr. Frelinghuysen*, Attorney General, in reply.

This is no question of party politics. There is no charge of fraud in the legislation; no allegation of an attempt by them to defeat the national will. The charge is, that the use attempted to be made of the law is in derogation of the act of Congress, and therefore unlawful. If the use is authorized, it is unconstitutional.

By the constitution, *Art.* I, *Sec.* 8, Congress has the power to declare war, to raise and support armies, and to provide for organizing, arming, and disciplining the militia. The states reserve all power not delegated to Congress. No state has a right to interfere with the exercise of the power conferred on Congress.

In 1863, Congress did legislate on this subject. The design was to raise armed men to suppress the rebellion. The court will take notice of the object of the law. It was to raise men, not money. So is the preamble of the act. Such is history.

There are incidents in the law which conflict with its design. There are aliens; persons over forty-five, and under twenty; those who choose to pay $300. These weaken, but do not alter the great purpose of the law. The $300 is a forfeiture for not going in person, or sending a substitute.

The construction given to the act by the township authorities is unnecessary. It was never designed by the legisla-

ture, or by the general government. It is in direct contravention of the whole policy of the law. The construction is inadmissible. The intent of the act was to relieve from the burden of taxation. The effect of this construction is to render it more severe.

If every township had acted upon this principle, it would have defeated the whole draft. The township has paid $31,000, and not raised a man. A new draft must necessarily be made. It merely increases the burden, and defeats the raising of an army.

We say that the township acted upon a gross misconstruction of the intent of the legislature, and of their power. But if the act necessarily requires such construction as has been given to it by the township; if it admits of no construction consistent with the policy of Congress, then it is unconstitutional, being in derogation of an act of Congress upon a subject within the delegated powers of the general government. The act of Congress in question, is identical in principle with a law to issue currency, or to regulate commerce, or to impose taxes upon government securities. The state has no right to meddle with it.

There is a distinction between the action of the township and merely paying for substitutes. The latter aided the government; the former thwarted its purpose, and conflicted directly with its power.

To give the law the construction sought for, would render the property of one not drafted, liable to be taken to discharge the personal liability of another, and would render the law unconstitutional. Service was not a duty on the township; the township was not liable to a draft.

We "the people," the subjects of the general government, are not townships, but people in our individual capacity. States, counties, are recognized in their relation to the federal government, not as corporations, but as geographical districts.

Tax payers as such were not liable to draft; neither minors, nor women, nor men over forty-five, were liable to the draft.

Hoagland et al. *v.* Township of Delaware.

This is not an exercise of the taxing power, which is admitted to be almost unlimited, despotic, and arbitrary. 2 *Coke's Inst.* 532; *The matter of the Mayor of New York,* 11 *Johns. R.* 80; 5 *Burns' Justice* 326; 1 *Story's Com.,* § 950; *Green* v. *Craft,* 28 *Miss.* 70.

The tax was not levied for " the service of the state." It was a levying of money *under color* of the taxing power, not *by virtue* of the power.

It is said, we raise bounties. This, though plausible, does not really come within the objection. It is a stimulant for the preservation of the nation. For the same object, and with the design of lightening the burden of conscription, we pay for substitutes.

There is a great diversity of opinion as to whether taking private property for private purposes is unconstitutional. *Smith's Const. Law* 264; *Gough* v. *Bell,* 2 *Zab.* 486; 2 *Kent's Com.* 340.

A court of equity has an unquestionable right to give relief. There is a perversion of a public law which works a public evil. This the court may prevent by injunction.

It is further insisted, that the public authorities are engaged in a constructive fraud of the law. Under color of the law, they take the property of one man and give it to another. They are making one set of men pay for duty due from others. The collector is ordered, as soon as the money is collected, to pay it out. It was not authorized to be paid until collected. The township officers have indemnified the collector. These are badges of fraud. *Taylor* v. *Board of Health,* 31 *Penn.* 73.

There was no remedy at law. There was no time for such relief, even if it might have been granted. *Morris Canal* v. *Jersey City,* 1 *Beas.* 227; *McCoy* v. *Chilicothe,* 3 *Hamm.* 379–80.

The injury is irreparable. *Town of Guilford* v. *Board of Supervisors,* 3 *Kernan* 143.

K*

THE CHANCELLOR.   The complainants are before the court, asking that an injunction issue to restrain the execution of a public law.   The defendants are a municipal corporation, and its accredited agents, who are about to carry into effect an act of the legislature imposing a tax upon the inhabitants of the township for certain specified purposes. The complainants are inhabitants and tax payers of that township, whose property is to be affected by the imposition of that tax.   They allege that the law imposing the tax is unconstitutional and void; or if the law admits of a construction consistent with the provisions of the constitution, they allege that the construction given to it by the township and by its officers, is unauthorized and illegal.   In either event, they complain that their property is about to be taken from them under color of a public law, but illegally, and in violation of their constitutional rights.   If their complaint be well founded in fact, they are parties aggrieved, and are entitled to redress at the hands of a court of justice.   Is this the proper tribunal to afford that redress?

The only questions involved are the validity and true construction of a public law.   The only relief asked is that the execution of that law be arrested.   Not so far only as it affects the complainants' property or operates upon their rights, but that its entire operation be suspended until the question of right be adjusted.   Now it will be admitted that this is a most delicate exercise of power by any tribunal, and so far as I am aware, has never been exercised to that extent by a court of equity.   The questions involved are strictly questions of law, within the cognizance and peculiar jurisdiction of the common law courts.   The relief which they are competent to afford is full, adequate, and complete. The Supreme Court exercises a supervision and control over all inferior tribunals and corporations, and may control the exercise of their powers so far as may be necessary to prevent abuse, to protect the rights of the citizen, and redress the wrong of every party aggrieved by their irregular and unlawful action.   The general rule is familiar, and too well

settled to be questioned, that a court of equity will not interfere where the complainant has adequate relief at law.

It is not denied that equity may and will interfere, even to prevent the assessment and collection of a tax about to be levied under color of a public law. But in all such cases, it is upon some peculiar ground of equity jurisdiction.

In *The Mohawk and Hudson R. R. Co.* v. *Clute and others*, 4 *Paige* 384, the injunction issued to restrain the collectors of the town of Rotterdam, and the several wards of the city of Albany, from collecting taxes which had been imposed upon the capital stock of the railroad company as personal estate in each of those places. It was held, that as the property of the complainants was liable to be taxed but once, as it had been taxed in two different towns, as it was doubtful to which town the right belonged, the party taxed might bring the claimants of the tax into equity by a bill, in the nature of a bill of interpleader, to settle their conflicting claims. And although it proved not to be a proper case for a bill of interpleader, yet the court having the case before it, and it being admitted that the assessment was illegal, the court by injunction restrained the collection of that tax.

In the *Paterson and Hudson R. R. Co.* v. *The Mayor and Common Council of Jersey City*, 1 *Stockt.* 434, an injunction issued out of this court to restrain the collection of a tax assessed upon the complainants' property. The property had been before assessed, and the Supreme Court had determined that it was not liable to taxation. The bill was in the nature of a bill of peace, to protect the party against the necessity of a multiplicity of suits at law. The legal rights of the parties had been established.

The same principle was recognized in the *Morris Canal and Banking Co.* v. *Jersey City*, 1 *Beas.* 227.

In these cases, the injunction restrained the levying of the tax upon the property of the complainants, without farther interfering with the execution of the law.

The case of *The Town of Guilford* v. *The Board of Supervisors of Chenango Co.*, 3 *Kernan* 143, was in its

Hoagland et al. v. Township of Delaware.

character and design, more similar to the present case. There the design of the suit was to arrest the entire assessment, on the ground, mainly, that the legislature had no authority to pass the law under which the assessment was made. But the Supreme Court, before whom the case arose, had both common law and equity jurisdiction, and might therefore well take cognizance of the strictly legal question involved. The relief asked, moreover, was not by individual tax payers, but by the town itself in its corporate capacity, who asked relief on behalf of all the tax payers of the town. Here the relief is not sought by the township, but by individuals, against the action of the township in its corporate capacity.

While these cases establish the principle that a court of equity may interfere to restrain the collection of a public tax assessed upon the property of individuals, they establish, with equal clearness, the principle that the bill must contain some peculiar ground of equitable jurisdiction. I find no such ground of relief in the present case. The questions involved are within the jurisdiction of the Supreme Court, and peculiarly proper to be adjudicated there.

It is proper to add, that the rule to show cause in this case was granted, and the temporary order made, to afford the complainants an opportunity of being promptly heard. Upon a question of so much moment, I did not feel at liberty to close the door of the court against them, without a hearing.

Upon that hearing, I am satisfied that there is no ground of relief in this court. If they are aggrieved, their remedy is in another tribunal.

The rule to show cause must be discharged, the injunction denied, and the bill dismissed.*

* The case was brought before the Supreme Court on *certiorari*, at February Term, 1865. The opinion of the court, affirming the constitutionality of the act of the legislature, was delivered by Elmer J., and is reported in 2 *Vroom* 189. That decision was appealed from, and reversed by the Court of Appeals, at November Term, 1867; the Chancellor delivering the opinion of the court.